UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
AJA ADEGHE, individually and on behalf of all
others similarly situated,

                                     Plaintiff,          **OPINION & ORDER**

       - against -                            No. 22-CV-10025 (CS)

THE PROCTER & GAMBLE COMPANY,

                                     Defendant.
-------------------------------------------------------------x

Appearances:

Spencer Sheehan
Sheehan & Associates, P.C.
Great Neck, New York

James Chung
Law Office of James Chung
Bayside, New York
*Counsel for Plaintiff*

Henry Liu
Covington & Burling LLP
Washington, D.C.

Eli Jacobs
Covington & Burling LLP
New York, New York
*Counsel for Defendant*

Seibel, J.

       Before the Court is Defendant's motion to dismiss.  (ECF No. 20.)  For the following

reasons, Defendant's motion is GRANTED.

## I.     **BACKGROUND**

       For purposes of this motion, the Court accepts as true the facts, but not the conclusions,

alleged by Plaintiff in her First Amended Complaint.  (*See* ECF No. 16 ("FAC").)

A.      **Facts**

The Procter & Gamble Company ("Defendant" or "P&G") manufactures and sells

laundry detergent under its Tide brand, including Tide 2.72 liter liquid detergent, (the

"Product").  (FAC ¶ 1.)  The Product is sold in bottles that retail for approximately $12.99 each.

(*See id.* ¶¶ 1, 17.)  Plaintiff purchased the Product at various locations, including a ShopRite

supermarket in New Rochelle, New York, at various times in 2021 and 2022.  (*Id.* ¶ 28.)

The front label of the Product states that it contains enough detergent for "64 loads◊."

(*Id.* ¶ 1.)  A picture of the front label included in Plaintiff's FAC is reproduced below.

 

(*Id.*)

Plaintiff maintains that the diamond ("◊") following the word "loads" on the Product's

front label is "difficult-to-see,"[1] (*id.* ¶ 2), and requires the consumer to "navigate[] hundreds of

---

[1] Plaintiff also claims that she "did not notice the diamond next to the word 'loads' which referred to the back label, and significantly qualified the 64 loads."  (FAC ¶ 31.)

words of varying size and fonts" to see that the diamond is linked to language on the Product's

back label which informs consumers that the bottle contains enough detergent for

"approximately 64 loads as measured just below Bar 1 on cap," (*id.* ¶ 3).  Immediately above that

language is a graphic describing "just below Bar 1" as enough for a "Medium Load[]," which

Plaintiff notes is "the smallest size listed."  (*Id.* ¶ 4.)  The graphic describes "just below Bar 3"

as enough for a "Large Load[]," and "Bar 5" as enough for a "h[igh] e[fficiency] Full Load[]."

(*Id.* ¶ 3.)  A picture of the Product's back label, which is included in Plaintiff's FAC and

identifies those different load sizes and their corresponding bars on the Product's cap, is

reproduced below.



(*Id.*)

       Plaintiff alleges that based on the "64 loads◊" statement on the Product's front label, she

– and consumers in general – expect the Product to contain enough detergent for "64 full size

loads of laundry." (*Id. ¶* 32.)  She claims that "[c]onsumers understand 'loads' in the context of laundry to refer to full units, in the same way as other . . . units of measurement, such as meters, liters, grams, feet, ounces and pounds," (*id. ¶* 5), and that she and "most Americans" typically only do laundry when they "ha[ve] enough laundry to fill up most of [their] washing machine . . . which means the size of the loads of laundry [they] do[] is best described as 'full' or 'very large' and not 'small,'" (*id.¶* 30).

Plaintiff also bases her claim that reasonable consumers understand the term "loads" to refer to full loads on several other sources, including the Department of Energy, which "referenc[ed] how washing machine directions generally tell consumers to load them to the point that the clothes container is loosely filled," (*id. ¶* 6 (internal quotation marks omitted)), and "determined that the term 'full load' is widely understood by consumers, washing machine manufacturers and detergent companies as referring to a load size that takes advantage of the whole usable capacity of the clothes washer," (*id. ¶* 7); certain "[u]npublished data from [P&G] . . . indicat[ing] that North American households prefer large size loads (43%) over very large or medium loads (21% each)," (*id. ¶* 8); a survey conducted by California utility companies, which "concluded that 59 percent . . . [of] laundry loads were either large or very large, more than twice as much as medium laundry loads," (*id. ¶* 9); "[c]onsumer laundry habits in favor of larger loads," (*id. ¶* 13); and a CNN survey recommending that Americans do their laundry "in a few big loads versus several smaller loads to mitigate the environmental impact," (*id. ¶* 14 (internal quotation marks omitted)).[2]

---

[2] Plaintiff also notes that "[t]he tendency towards filling up a washing machine is not limited to the United States," (*id. ¶* 11), and that approximately 75% of Europeans use the full capacity of their washer when doing laundry, (*id. ¶* 12).

Given her understanding that the term "load" refers to full loads of laundry, Plaintiff contends that the "64 loads◊" statement on the Product's front label is materially misleading, as the Product only contains enough detergent for 32 full loads.  (*See id.* ¶¶ 15-16, 29.)  Plaintiff maintains that she "paid more for the Product than she would have had she known she would only be able to do 32 full loads of laundry [with it]," (*id.* ¶ 35), and that "[t]he value of the Product . . . was materially less than [what she paid for it]," (*id.* ¶ 36).

### B.     Procedural History

Plaintiff filed her initial Complaint on November 25, 2022.  (ECF No. 1.)  On January 31, 2023, Defendant filed a pre-motion letter in anticipation of a motion to dismiss.  (ECF No. 10.)  I held a pre-motion conference on February 28, 2023, at which I granted Plaintiff leave to amend and set a briefing schedule.  (*See* Minute Entry dated Feb. 28, 2023.)

The operative complaint, Plaintiff's FAC, was filed on March 20, 2023, and asserts claims for:  (1) violations of Sections 349 and 350 of the New York General Business Law ("GBL"); (2) violations of "State Consumer Fraud Acts;" (3) breaches of express warranty and the implied warranty of merchantability and violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. §§ 2301, *et seq.*; and (4) unjust enrichment.  (FAC ¶¶ 45-66.)  Plaintiff wishes to represent a class of all persons residing in New York who purchased the Product within the statute of limitations, as well as a separate multi-state class of similar purchasers from South Dakota, Wyoming, Idaho, Alaska, West Virginia, Arkansas, North Carolina, and Utah, (*id.* ¶¶ 38-44), and seeks both monetary damages and costs and expenses, including attorney's fees, (*id.* at 10-11).

The instant motion followed.  (*See* ECF No. 20.)  In a footnote in her Opposition,

Plaintiff withdrew her claim for violation of the MMWA.  (ECF No. 22 ("P's Opp.") at 1 n.1.)[3]

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[4]  "A claim

has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  "While a

complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires

more than labels and conclusions, and a formulaic recitation of the elements of a cause of action

will not do."  *Twombly*, 550 U.S. at 555.  While Federal Rule of Civil Procedure 8 "marks a

notable and generous departure from the hypertechnical, code-pleading regime of a prior

era, . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than

conclusions."  *Iqbal*, 556 U.S. at 678-79.

In considering whether a complaint states a claim upon which relief can be granted, the

court "begin[s] by identifying pleadings that, because they are no more than conclusions, are not

entitled to the assumption of truth," and then determines whether the remaining well-pleaded

---

[3] One of Plaintiff's lawyers, Spencer Sheehan, regularly brings such claims and then withdraws them (whether personally or, as here, through a brief signed by co-counsel) in the face of a motion to dismiss.  *See Fuller v. Stop & Shop Supermarket Co. LLC*, No. 22-CV-9824, 2023 WL 8005319, at *2 n.1 (S.D.N.Y. Nov. 17, 2023) (collecting cases).  The Court again questions how counsel can continue to bring such claims in good faith, as he plainly knows he will be unable to justify them.

[4] Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

factual allegations, accepted as true, "plausibly give rise to an entitlement to relief." *Id.* at 679.

Deciding whether a complaint states a plausible claim for relief is "a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Id.*

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of

misconduct, the complaint has alleged – but it has not 'shown' – 'that the pleader is entitled to

relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)).

## III.    DISCUSSION

### A.    New York General Business Law Claims

Plaintiff's first cause of action arises under Sections 349 and 350 of the GBL.  The

former prohibits "[d]eceptive acts or practices in the conduct of any business, trade or

commerce," N.Y. Gen. Bus. Law § 349, and the latter prohibits "[f]alse advertising in the

conduct of any business, trade or commerce," *id.* § 350.  To state a claim under either section, a

plaintiff must plausibly allege "first, that the challenged act or practice was consumer-oriented;

second, that it was misleading in a material way; and third, that the plaintiff suffered injury as a

result of the deceptive act." *Izquierdo v. Mondelez Int'l, Inc.*, No. 16-CV-4697, 2016 WL

6459832, at *6 (S.D.N.Y. Oct. 26, 2016); *see Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d

Cir. 2015).

"New York courts apply an objective standard in determining whether acts or practices

are materially deceptive or misleading:  whether the alleged act is likely to mislead a reasonable

consumer acting reasonably under the circumstances." *Dwyer v. Allbirds, Inc.*, 598 F. Supp. 3d

137, 149 (S.D.N.Y. 2022).  "To survive a motion to dismiss, a plaintiff must do more than

plausibly allege that a label might conceivably be misunderstood by some few consumers." *Id.*

Instead, "a plaintiff must plausibly allege that a significant portion of the general consuming

public or of targeted customers, acting reasonably in the circumstances, could be misled." *Id.*

"Although the question of whether a business practice or advertisement is misleading to the

reasonable consumer is generally a question of fact, it is well settled that a court may determine

as a matter of law that an allegedly deceptive [practice] would not have misled a reasonable

consumer." *Wynn v. Topco Assocs., LLC*, No. 19-CV-11104, 2021 WL 168541, at *2 (S.D.N.Y.

Jan. 19, 2021).

Plaintiff alleges that the Product's labeling is materially misleading because:  (1)

consumers understand the term "load" in the context of laundry to refer to "full" loads, (P's Opp.

at 2-4); and (2) the "64 loads◊" statement on the Product's front label "giv[es] an impression that

the Product would provide enough detergent to wash 64 full loads of laundry," thereby

"extinguish[ing] the need" to consult the rest of the Product's label, (*id.* at 5).  The Court

disagrees.

As the Second Circuit has made clear, "[i]n determining whether a reasonable consumer

would have been misled by a particular advertisement, context is crucial." *Mantikas v. Kellogg

Co.*, 910 F.3d 633, 636 (2d Cir. 2018).  In certain contexts "involving statements susceptible to

only one interpretation" – *i.e.*, "[w]hen the meaning of a challenged statement is clear [–]

shoppers expect that the rest of the package will confirm that representation and are not

reasonably expected to investigate further." *Nguyen v. Algenist LLC*, No. 22-CV-13, 2022 WL

17251733, at *7 (S.D.N.Y. Nov. 28, 2022).  "But when a statement is ambiguous, every

reasonable shopper knows the devil is in the details and thus would seek clarification elsewhere

on the package." *Id.*; *see Engram v. GSK Consumer Healthcare Holdings (US) Inc.*, No. 19-CV-

2886, 2021 WL 4502439, at *3 (E.D.N.Y. Sept. 30, 2021) ("Where the front of a package makes

a bold and blatant misstatement about a key element of a product, there is little chance that

clarification or context on the reverse of the package will suffice to overcome a deception

claim . . . .  But when the front of the package is better characterized as ambiguous than

misleading, courts look[] at the alleged misrepresentations in their full context and are more

likely to grant a motion to dismiss.").

       That is precisely the case here, where the allegations in the FAC themselves demonstrate

that the term "load" is ambiguous.  The term is typically accompanied by a size-qualifying

adjective.  (*See, e.g.*, FAC ¶ 7 (alleging that the Department of Energy "determined that the term

'*full* load' is widely understood by consumers . . . as referring to a load size that takes advantage

of the whole usable capacity of the clothes washer.") (emphasis added); *id.* ¶ 8 (citing "data from

Procter & Gamble [which] indicate that North American households prefer *large size* loads . . .

over *very large* or *medium* loads . . . .") (emphases added); *id.* ¶ 9 ("California's utility

companies . . . concluded that 59 percent . . . [of] laundry loads were either *large* or *very large*,

more than twice as much as *medium* laundry loads.") (emphases added); *id.* ¶ 13 ("Consumer

laundry habits . . . favor . . . *larger* loads . . . .") (emphasis added); *id.* ¶ 14 (citing a CNN survey

recommending that Americans do their laundry "in a few *big* loads versus several *smaller* loads"

to promote environmental sustainability) (emphases added).  Given such allegations, none of

which show that the term "64 loads◊" is susceptible to only one interpretation, Plaintiff's

insistence that the Product's front label is "unambiguous," (P's Opp. at 4), and "giv[es] an

impression that the Product would provide enough detergent to wash 64 full loads of laundry,"

thereby eliminating "the need to consult . . . the back of the box," (*id.* at 5 (internal quotation

marks and alterations omitted)), is simply not plausible.

       Instead, the ambiguity on the Product's front label – and the ◊ after the word "loads" –

would prompt a reasonable consumer to consult the Product's back label.  There, they would find

additional context clarifying the "64 loads◊" representation, expressly stating that the Product

contains enough detergent for 64 medium loads as measured using the Product's cap.  (FAC ¶¶

3-4.)  Such "clarification . . . defeat[s] [Plaintiff's] claim," *Reyes v. Crystal Farms Refrigerated*

*Distrib. Co.*, No. 18-CV-2250, 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019), as no

reasonable consumer considering the Product's labeling as a whole would interpret the phrase

"64 loads◊" to mean that the Product contains enough detergent for 64 high-efficiency full loads

of laundry, *see, e.g.*, *Hardy v. Olé Mexican Foods, Inc.*, 616 F. Supp. 3d 247, 252 (W.D.N.Y.

2022) (rejecting GBL claim where "[a]t worst, the front-label representations are ambiguous as

to where the [product is] made, which is resolved after reading the . . . back of the package."),

*aff'd*, 2023 WL 3577867 (2d Cir. May 22, 2023); *Warren v. Whole Foods Mkt. Grp., Inc.*, 574 F.

Supp. 3d 102, 117 (E.D.N.Y. 2021) ("Plaintiffs' understanding of [the challenged term] is

debatable at best.  And the [back] label would set plaintiffs straight."  Accordingly, "plaintiffs'

allegations would fall short even if their reading of the [challenged term], in isolation, were a

colorable construction."); *Foster v. Whole Foods Mkt. Grp., Inc.*, No. 22-CV-1240, 2023 WL

1766167, at *4 (E.D.N.Y. Feb. 3, 2023) ("[T]he statements on the Product's front label, while

ambiguous, are not false.  More significantly, the context provided on the Product's back

label . . . is sufficient to clarify any arguable ambiguity contained on the front label.  I therefore

dismiss plaintiff's GBL claims.").[5]

---

[5] Plaintiff's suggestion that she "did not notice the diamond next to the word 'loads'
which referred to the back label," (FAC ¶ 31; *see id.* ¶ 2 (describing the ◊ on the Product's front
label as "difficult-to see")), is beside the point, as a reasonable consumer is expected to consult
an ambiguous label in its entirety, *see, e.g.*, *Brown v. Kellogg Sales Co.*, No. 20-CV-7283, 2022
WL 992627, at *6 (S.D.N.Y. Mar. 31, 2022) ("[A] manufacturer may clarify an ambiguous
interpretation of a label based on disclaimers and disclosures on the side or back of product
packaging" and "the reasonable consumer would overcome any confusion by referring to the
unambiguous ingredient list on the [back of the] packaging."); *Scruggs v. Mars, Inc.*, No. 22-CV-

Plaintiff's assertion that "[c]onsumers understand 'loads' in the context of laundry to

refer to full units, in the same way as other . . . units of measurement, such as meters, liters,

grams, feet, ounces and pounds," (FAC ¶ 5), is simply an unsupported conclusion that I need not

credit, particularly as it is contradicted by other allegations in the FAC demonstrating that

consumers understand that loads of laundry may be different sizes, *see Rockaway Bev., Inc. v.

Wells Fargo & Co.*, 378 F. Supp. 3d 150, 160 (E.D.N.Y. 2019) ("[C]ourts . . . need not credit

conclusory statements unsupported by assertions of facts" or "accept as truth conflicting

pleadings that make no sense . . . or that are contradicted . . . by statements in the complaint

itself . . . ."). Moreover, the assertion is implausible. Meters, liters, grams, feet, ounces, and

pounds all have agreed-upon, indisputable parameters. A reasonable consumer seeing the word

"foot" would know that it meant twelve inches, but given that washing machines vary in their

capacity and people vary in their needs and preferences, it is not plausible that she would see the

word "load" on the Product and assume that the manufacturer meant "the amount of laundry that

fills my machine." At most (and whether or not she saw the diamond) she would think, "I

wonder what they mean by 'load'" – a question that is answered by the back label.

Plaintiff's claim reflects little more than "her selective interpretation of [an] individual

word[] from the Product's labeling." *Warren v. Coca-Cola Co.*, No. 22-CV-6907, 2023 WL

3055196, at *6 (S.D.N.Y. Apr. 21, 2023). But she "is not entitled to take a fleeting glimpse at

the front of a product label, home in on the one word that confirms her hopes about the

---

5617, 2023 WL 8263364, at *7 (C.D. Cal. Nov. 9, 2023) ("[A] reasonable consumer would be
expected to review and consider the back label" where "the front label of the Product is
ambiguous . . . .").

product . . . and then sue to recover the purchase price when she eventually learns that the

product is what the label, read in its entirety, says it is." *Id.*[6]

Simply put, a reasonable consumer viewing the Product's label as a whole would not

conclude that the Product contained enough detergent for 64 full loads of laundry.  Accordingly,

Plaintiff's GBL claims must be dismissed.[7]

### B.  **Plaintiff's Remaining Claims**

Plaintiff also advances claims for violations of certain state consumer fraud acts, breach

of express and implied warranties, and unjust enrichment.

### 1.  **State Consumer Fraud Acts**

The FAC alleges that Defendant violated the "Consumer Fraud Acts" of eight states,

which "are similar to the [GBL] . . . and prohibit the use of unfair or deceptive business

practices." (FAC ¶ 49; *see id.* ¶ 38.)

Plaintiff, however, fails to identify the specific "Consumer Fraud Acts" at issue or how

Defendant allegedly violated them.  (*See generally* FAC.)  That failure "has made it impossible

for Defendant to assess what she ultimately hopes to prove" and "falls short of satisfying Rule

8's pleading requirements . . . ." *Brownell v. Starbucks Coffee Co.*, No. 22-CV-119, 2023 WL

4489494, at *6 (N.D.N.Y. July 12, 2023); *see Smith v. Adidas Am., Inc.*, No. 22-CV-788, 2023

---

[6] Indeed, there are no allegations in the FAC that the Product does not contain enough laundry detergent for 64 medium loads when used as directed, (*see generally* FAC), and where a "Product's label would not have misled a reasonable consumer[] who followed the instructions on the label," it is not misleading as a matter of law, *Devey v. Big Lots, Inc.*, 635 F. Supp. 3d 205, 212-13 (W.D.N.Y. 2022).

[7] Because Plaintiff has failed to allege that the Product's label is materially misleading, I need not reach the parties' remaining arguments as to whether or not she has adequately alleged an injury in connection with her purchase of the Product.  *See Foster*, 2023 WL 1766167, at *4 n.5.

WL 5672576, at *7 (N.D.N.Y. Sept. 1, 2023) ("Plaintiff's failure to identify the relevant state-law statutes or otherwise identify the applicable state law theories of liability provides Defendant with insufficient notice of the claims against it."); *Young v. Wells Fargo & Co.*, 671 F. Supp. 2d 1006, 1016 (S.D. Iowa 2009) ("'Shotgun pleading' is especially problematic with respect to pleading numerous causes of action under a variety of state consumer protection statutes because the type and degree of protection offered by the various state laws varies extensively.").[8]

In any event, even if each state statute had identical requirements, Plaintiff's State Consumer Fraud Acts claims are also subject to dismissal for the independent reason that they fail under the same reasonable consumer standard which was fatal to her GBL claim. "[C]onsumer protection statutes from states across the country" share the common requirement that "a reasonable consumer would be misled by a defendant's statement," *Van Orden v. Hikari Sales U.S.A., Inc.*, No. 22-CV-504, 2023 WL 5336813, at *6 (N.D.N.Y. Aug. 18, 2023), and "because this Court has already determined that the Product's labeling would not mislead a reasonable consumer, [her] consumer fraud multi-state class claims [must be] dismissed," *Id.*; *see Vaglica v. Reckitt Benckiser LLC*, No. 22-CV-5730, 2023 WL 6930754, at *4 (E.D.N.Y. Oct. 19, 2023) ("Where the court finds that Plaintiff's individual claims should be dismissed, it lacks jurisdiction to decide the putative class claims.").

Accordingly, Plaintiff's "State Consumer Fraud Acts" claim must be dismissed.

### 2. Express Warranty

An express warranty is an "affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain." N.Y. U.C.C. Law § 2-

---

[8] Mr. Sheehan was counsel in both *Brownell* and *Smith*. The Court therefore questions why he continues to plead in an insufficient fashion, when a modicum of legal research would avoid the problem.

313(1)(a).  "While no formal wording is necessary to create an express warranty, there must be a representation of fact or specific promise about the product, rather than an expression of opinion."  *Brodie v. Green Spot Foods, LLC*, 503 F. Supp. 3d 1, 9 (S.D.N.Y. 2020) (citing N.Y. U.C.C. Law § 2-313(2)).  Additionally, "[t]o assert a breach of warranty claim under New York Law, the buyer must within a reasonable amount of time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."  *Gordon v. Target Corp.*, No. 20-CV-9589, 2022 WL 836773, at *14 (S.D.N.Y. Mar. 18, 2022).  "To adequately plead the pre-suit notice requirement, plaintiffs must provide factual allegations – such as the date and method plaintiffs sent a pre-suit notice – supporting the contention that they notified the defendant of the alleged breach within a reasonable time."  *Dwyer*, 598 F. Supp. 3d at 155.

Here, the FAC alleges only that "Plaintiff recently became aware of Defendant's breach of the Product's warranties," (FAC ¶ 60), and that "Plaintiff provided or provides notice to Defendant . . . that it breached the Product's warranties," (*id.* ¶ 61).  But as the Court recently held in another case brought by Plaintiff's counsel involving a nearly identical express warranty claim, "[s]uch a vague allegation is insufficient to avoid dismissal."  *Fuller*, 2023 WL 8005319, at *8; *see Gordon*, 2022 WL 836773, at *14 (collecting cases).

Plaintiff argues in the alternative that breach of express warranty notice requirements "'have long been jettisoned in New York' for retail sales."  (P's Opp. at 10 (quoting *Gavilanes v. Gerber Prods. Co.*, No. 20-CV-5558, 2021 WL 5052896, at *7 (E.D.N.Y. Nov. 1, 2021)).  But *Gavilanes*, the case on which Plaintiff relies, "has been repeatedly criticized by courts in this district as misapplying New York law and reflects a disfavored minority view."  *Fuller*, 2023 WL 8005319, at *8.  Moreover, the *Gavilanes* exception to the notice requirement "is limited to

products for human consumption that cause physical injury," *Bassaw v. United Indus. Corp.*, 482

F. Supp. 3d 80, 86 n.3 (S.D.N.Y. 2020), and simply "does not apply where, as here, a plaintiff

alleges only economic injury," *Gordon*, 2022 WL 836773, at \*14, in connection with "claims

involving a product not intended for human consumption," *Smith*, 2023 WL 5672576, at \*8; *see*

*Budhani v. Monster Energy Co.*, 527 F. Supp. 3d 667, 685 (S.D.N.Y. 2021) (explaining that

"[t]he pre-suit notice requirement is waived only in cases involving personal injury" and

rejecting breach of express warranty claim where "[p]laintiff has not alleged any physical or

personal injury as a result of Defendant's alleged breach").[9]

Accordingly, Plaintiff's express warranty claim must be dismissed.

### 3.  Implied Warranty of Merchantability

A breach of the implied warranty of merchantability occurs when the product at issue is

"unfit for the ordinary purposes for which such goods are used."  *Santiful v. Wegmans Food*

*Mkts., Inc.*, No. 20-CV-2933, 2023 WL 2457801, at \*4 (S.D.N.Y. Mar. 10, 2023).  In this case,

that would mean that the Product is unfit for use as laundry detergent.  But the FAC alleges that

the Product is defective simply because it only had enough detergent to do 32 full loads of

laundry – *i.e.*, it contained less detergent than expected.  (*See* FAC ¶¶ 15, 32, 35, 55-57.)  There

are no allegations that the Product is "unsafe for use . . . [,] so bad as to be [unusable]," *Warren*,

574 F. Supp. 3d at 119, or otherwise not of merchantable quality.

---

[9] Mr. Sheehan was counsel for plaintiff in *Gordon*, *Smith* and *Budhani*.  As the Court stressed when admonishing him in its recent *Fuller* decision, he should by now be aware that this sweeping notice argument based on *Gavilanes* is frivolous.  *See* 2023 WL 8005319, at \*8 n.8. That this time the frivolous argument was made in a brief signed by co-counsel is hardly comforting.  Mr. Sheehan and those with whom he works should consider the provisions of Rule 11 before attempting to raise this argument in the future.  *See* Fed. R. Civ. P. 11(b)(2).  Indeed, they should do so before including an express warranty claim in a complaint.

Accordingly, Plaintiff's implied warranty claim must also be dismissed.[10]

### 4.  Unjust Enrichment

To state a claim for unjust enrichment under New York law a plaintiff must show that "(1) the defendant was enriched; (2) at the expense of the plaintiff; and (3) that it would be inequitable to permit the defendant to retain that which is claimed by Plaintiff." *Reynolds v. Lifewatch, Inc.*, 136 F. Supp. 3d 503, 524 (S.D.N.Y. 2015).  "Unjust enrichment is available only in unusual situations when, though the defendant has not breached a contract nor committed a recognized tort, circumstances create an equitable obligation running from the defendant to the plaintiff." *Mahoney v. Endo Health Sols., Inc.*, No. 15-CV-9841, 2016 WL 3951185, at *11 (S.D.N.Y. July 20, 2016).  Courts will routinely dismiss an unjust enrichment claim that "simply duplicates, or replaces, a conventional contract or tort claim." *Ebin v. Kangadis Food Inc.*, No. 13-CV-2311, 2013 WL 6504547, at *7 (S.D.N.Y. Dec. 11, 2013).

Here, Plaintiff "makes no factual allegations unique to [her] unjust enrichment claim and fails to explain why the unjust enrichment claim is distinct from . . . [her other] claims." *Advanced Knowledge Tech, LLC v. Fleitas*, No. 21-CV-992, 2021 WL 6126966, at *5 (S.D.N.Y. Dec. 28, 2021); *see Ebin*, 2013 WL 6504547, at *7 (dismissing unjust enrichment claim because plaintiffs failed to explain how it was not duplicative of negligent misrepresentation, fraud, and breach of warranty claims); *Barreto*, 518 F. Supp. 3d at 808-09 (dismissing unjust enrichment claim because based on same facts as consumer deception claims); *Alce v. Wise Foods, Inc.*, No.

---

[10] To the extent Plaintiff bases her implied warranty claim on the allegation that the Product does not conform to any promise or affirmation of fact made on its label – and it is hard to tell, as she pleads her express and implied warranty claims together – the implied warranty claim fails for the same reasons as her express warranty claim. *See Barreto v. Westbrae Nat., Inc.*, 518 F. Supp. 3d 795, 807 (S.D.N.Y. 2021).

17-CV-2402, 2018 WL 1737750, at \*12 (S.D.N.Y. Mar. 27, 2018) (dismissing unjust enrichment

claim as duplicative of GBL §§ 349 and 350 claims).

Therefore, Plaintiff's unjust enrichment claim is dismissed.[11]

### C.    **Leave to Amend**

Leave to amend a complaint should be freely given "when justice so requires."  Fed. R.

Civ. P. 15(a)(2).  "[I]t is within the sound discretion of the district court to grant or deny leave to

amend."  *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).  "Leave to amend, though liberally

granted, may properly be denied" for "'repeated failure to cure deficiencies by amendments

previously allowed'" or "'futility of amendment,'" among other reasons.  *Ruotolo v. City of N.Y.*,

514 F.3d 184, 191 (2d Cir. 2008) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In her Opposition, Plaintiff requested that I either deny Defendant's motion or grant her

leave to amend a second time.  (*See* P's Opp. at 12.)  But because most of "[t]he problems with

the dismissed claims are substantive" and "better pleading will not cure them," *Leschak v.*

*Raiseworks, LLC*, No. 14-CV-8072, 2016 WL 11695068, at \*10 (S.D.N.Y. Mar. 7, 2016),

amendment would largely be futile, *Trombetta v. Novocin*, 414 F. Supp. 3d 625, 634 (S.D.N.Y.

2019); *see Boswell v. Bimbo Bakeries USA, Inc.*, 570 F. Supp. 3d 89, 97 (S.D.N.Y. 2021);

*Roundtree v. N.Y.C.*, No. 19-CV-2475, 2021 WL 1667193, at \*6 (S.D.N.Y. Apr. 28, 2021)

(collecting cases).

---

[11] Plaintiff's assertion that she is "permit[ted] . . . to set out 2 or more statements of a
claim or defense alternatively or hypothetically," (P's Opp. at 11), does not alter this outcome.
As previously explained to Plaintiff's counsel, while "unjust enrichment may be pleaded in the
alternative[,] it is equally true that, even pleaded in the alternative, claims for unjust enrichment
will not survive a motion to dismiss where plaintiffs fail to explain how their unjust enrichment
claim is not merely duplicative of their other causes of action."  *Fuller*, 2023 WL 8005319, at \*9
n.10; *see Bermudez v. Colgate-Palmolive Co.*, No. 21-CV-10988, 2023 WL 2751044, at \*15
(S.D.N.Y. Mar. 31, 2023).

Moreover, Plaintiff has already amended her Complaint once, after receiving a pre-motion letter outlining the grounds on which Defendant planned to move.  (*See* ECF No. 10.) Generally, the failure to fix deficiencies in an initial pleading, after being provided notice of those deficiencies, is alone sufficient ground to deny leave to amend.  *See Nat'l Credit Union Admin. Bd. v. U.S. Bank Nat'l Ass'n*, 898 F.3d 243, 257-58 (2d Cir. 2018) ("When a plaintiff was aware of the deficiencies in his complaint when he first amended, he clearly has no right to a second amendment even if the proposed second amended complaint in fact cures the defects of the first.  Simply put, a busy district court need not allow itself to be imposed upon by the presentation of theories seriatim."); *In re Eaton Vance Mut. Funds Fee Litig*., 380 F. Supp. 2d 222, 242 (S.D.N.Y. 2005) (denying leave to amend because "the plaintiffs have had two opportunities to cure the defects in their complaints, including a procedure through which the plaintiffs were provided notice of defects in the Consolidated Amended Complaint by the defendants and given a chance to amend their Consolidated Amended Complaint," and "plaintiffs have not submitted a proposed amended complaint that would cure these pleading defects"), *aff'd sub nom*. *Bellikoff v. Eaton Vance Corp.*, 481 F.3d 110, 118 (2d Cir. 2007) (*per curiam*) ("[P]laintiffs were not entitled to an advisory opinion from the Court informing them of the deficiencies in the complaint and then an opportunity to cure those deficiencies.").

Further, Plaintiff has not suggested that she is in possession of facts that would cure the deficiencies identified in this ruling.  *See TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505 (2d Cir. 2014) (plaintiff need not be given leave to amend if plaintiff fails to specify how amendment would cure the pleading deficiencies in the complaint); *Gallop v. Cheney*, 642 F.3d 364, 369 (2d Cir. 2011) (district court did not err in dismissing claim with prejudice in absence of any indication plaintiff could or would provide additional allegations leading to different

18

result); *Olsen v. Sherry Netherland, Inc.*, No. 20-CV-103, 2022 WL 4592999, at *15 (S.D.N.Y.

Sept. 30, 2022) (denying leave to amend where plaintiff did not "explain how any amendment

would cure the deficiencies identified by the Court").

     Accordingly, the Court declines to grant Plaintiff leave to amend a second time.

*   *   *

     I join my Northern District colleague in noting that, thanks to Mr. Sheehan and his

colleagues,

> courts around the country have been inundated with a seemingly endless supply of
> trivial (bordering on frivolous) lawsuits, asking the courts to read the labels of
> consumer goods in manners that strain credulity or to simply ignore other relevant
> language provided on the labels.  The case before the Court here is one of many
> that should give pause to Mr. Sheehan and serve as a reminder that **CONTEXT
> MATTERS** and that a label should be read in its entirety.

*Van Orden*, 2023 WL 5336813, at *10 (emphasis in original).

## IV.    CONCLUSION

     For the foregoing reasons, Defendant's motion to dismiss is GRANTED.  The Clerk of

Court is respectfully directed to terminate the pending motion, (ECF No. 20), and close the case.

**SO ORDERED.**

Dated: January 2, 2024
     White Plains, New York

                            CATHY SEIBEL, U.S.D.J.